NOT DESIGNATED FOR PUBLICATION

No. 124,115

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

RUSSELL WALTER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed June 3, 2022. Reversed and remanded with directions.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Russell Walter was charged with two counts of aggravated indecent liberties with a child. After considering the evidence presented at the preliminary hearing, the district court dismissed the charges against Walter, finding there was no evidence any sexually abusive touching of the alleged victim occurred. The State appeals, arguing the district court erroneously resolved conflicting evidence in favor of the defense. Upon review, we find, however weak the evidence was at the preliminary hearing, a factual question still existed requiring Walter be bound over for trial on the charges presented. Thus, we must reverse and remand to the district court for further proceedings.

1

The relevant factual and procedural background is more fully set forth in *State v. Freeman* (No. 124,111, this day decided) (unpublished opinion). Briefly summarized, Walter was a friend of Justin Freeman and often visited the Freemans' home. Freeman's children were friends with the alleged victim in this case, S.Y. The girls would sit on Walter's and Freeman's laps to be tickled. This tickling always occurred over the clothes, with the lights on, in view of the other children, and often with Freeman's wife present as well. These actions occurred regularly over many months. At some point, S.Y. told her mother, S.C., the tickling made her uncomfortable, but S.C. allowed S.Y. to continue to play with the Freeman children in the Freemans' home. S.Y. continued to participate in the tickling with Freeman and Walter.

In August 2020, S.Y. told S.C. she thought "[Freeman] touched [her] in some bad places." S.C. asked S.Y. where the touching occurred, and S.Y. gestured toward her breasts, buttocks, and genital area. S.Y. later told S.C. this touching occurred frequently, and S.Y. also told S.C. that Walter touched her inappropriately as well. S.C. knew Walter was a friend of Freeman and a frequent guest in Freeman's home.

S.Y.'s allegations were reported to law enforcement, and S.Y. subsequently participated in a forensic interview conducted by Jessica Taylor, which was videorecorded and later admitted as evidence at the preliminary hearing. Taylor also conducted a videorecorded interview of D.C., S.Y.'s brother, which was included on the same DVD as S.Y.'s interview; however, there is no indication D.C.'s interview was admitted or considered by the district court. S.Y. told Taylor she had been touched by Freeman and Walter, specifically on her breasts, buttocks, and vaginal area.

In October 2020, Walter and Freeman both were charged with two counts of aggravated indecent liberties with a child. The district court held a joint preliminary

hearing in March 2021. At the conclusion of the State's evidence, the district court took the matter under advisement and issued a written ruling after rewatching the forensic interview video. The district court dismissed the charges against both Walter and Freeman, finding Taylor's questioning of S.Y. resulted in answers reflecting innocent conduct. Specifically, the district court found the conduct occurred repeatedly in view of the other children and Freeman's wife, with the lights on, and everyone fully clothed. No one, including S.Y., believed the tickling was inappropriate or sexually abusive at the time. The district court found the conduct was only viewed in a new light when Freeman was charged with sexually abusing another child in an unrelated case. Additional facts are set forth as necessary.

ANALYSIS

*Standard of Review*

The State now appeals the district court's dismissal of the charges against Walter following the preliminary hearing. At a preliminary hearing, the district court hears the State's evidence and determines (1) whether a felony has been committed and (2) whether there is probable cause to believe that the defendant committed the crime. Our standard of review is de novo on appeal of a district court's dismissal of charges for lack of probable cause after the preliminary hearing. *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012).

Probable cause requires the court to find the evidence is "'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief'" of the defendant's guilt. *State v. Brown*, 299 Kan. 1021, 1030, 327 P.3d 1002 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). In determining whether this standard is satisfied, the district judge must draw all inferences in favor of the State. "Even where the evidence is weak, the defendant should be bound

3

over for trial if the evidence tends to disclose that the offense charged was committed and that the defendant committed it. [Citation omitted.]" *Washington*, 293 Kan. at 734. Where the evidence fails to establish a felony has been committed, the court must discharge the defendant. K.S.A. 2020 Supp. 22-2902(3).

To the extent the issue requires us to interpret the statute under which Walter was charged—K.S.A. 2019 Supp. 21-5506(b)(3)(A)—it presents a question of law subject to unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

*Discussion*

Walter asserts the video of Taylor's forensic interview of D.C. can be considered as part of the record on appeal because D.C.'s interview was included on the same DVD as S.Y.'s, which the district court said it would review before issuing its ruling. Contrary to Walter's arguments, it appears counsel for all parties understood at the preliminary hearing only S.Y.'s interview was being offered into evidence. The State was explicit that "it would just be the part regarding [S.Y.'s] interview," at the time the State's exhibit was admitted. We observe no indication the district court considered D.C.'s interview in dismissing the charges against Walter.

K.S.A. 2019 Supp. 21-5506(b)(3)(A) defines aggravated indecent liberties with a child, in pertinent part, as: "Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both," done "with a child who is under 14 years of age." Here, it is undisputed S.Y. was under 14 years of age when the alleged touching occurred. Thus, the relevant inquiry is whether (1) any touching of S.Y. was lewd and (2) whether Walter acted with the requisite intent—to arouse or satisfy his own sexual desires, S.Y.'s, or both.

4

In *State v. Ta*, 296 Kan. 230, 242-43, 290 P.3d 652 (2012), our Supreme Court explained whether a defendant engaged in lewd touching of a child is a separate and distinct element from the requisite mental state—the intent "to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 2019 Supp. 21-5506(b)(3)(A). These elements should not be collapsed into a single element. *Ta*, 296 Kan. at 241. But as another panel of this court held in *State v. Rutherford*, 39 Kan. App. 2d 767, 776, 184 P.3d 959 (2008): "Whether a touching is lewd depends upon the totality of the circumstances and is a question for the jury."

Whereas the *Ta* court addressed the sufficiency of the evidence underlying Ta's conviction, here, the issue is whether there was probable cause to bind Walter over for trial. See 296 Kan. at 242-43. Although a reasonable fact-finder may well conclude the State's evidence is too weak to prove lewd touching beyond a reasonable doubt, probable cause is a much lower standard. All inferences should be drawn in favor of the State, despite weak or conflicting evidence. See *Washington*, 293 Kan. at 733-34.

Here, S.Y. alleged Walter touched her breasts, buttocks, and vaginal areas, which is lewder than the touching of children's faces, hair, arms, and legs in *Ta*. The circumstances of the touching—done over the clothing, in view of the other children and Freeman's wife, and was a regular occurrence—and the fact there was some conflicting evidence—S.Y. pointing to her front torso area in the interview video when asked where she was touched—likely weakens the State's claims. But these are still fact questions for a jury to resolve at trial. See *Washington*, 293 Kan. at 733-34; *Rutherford*, 39 Kan. App. 2d at 776. The district court erred in concluding there was insufficient evidence to find probable cause Walter engaged in lewd fondling or touching of S.Y.

Walter argues the State failed to present evidence he acted with the intent to satisfy or arouse his own sexual desires, S.Y.'s, or both. And this element must also be proven to constitute the offense. *Ta*, 296 Kan. at 241, 243. As to the requisite mental

5

state, the *Rutherford* panel noted: "Intent to arouse the sexual desires of the victim or the defendant . . . may be shown by circumstantial evidence. [Citations omitted.]" 39 Kan. App. 2d at 776. Further, "intent is a question of fact for the jury." *State v. Mitchell*, 262 Kan. 434, 437, 939 P.2d 879 (1997). It does not appear the district court's decision turned on Walter's intent; its ruling focused solely on whether the touching was lewd. Thus, we find the district court erred in granting Walter's oral motion to dismiss made at the close of the preliminary hearing.

It would appear the district court recognized the fallacy in the State's charging of Walter for what appeared to all involved was innocent play when it occurred and has now been converted to allegations of misconduct because Freeman was charged with other crimes based on a different victim. The district court was likely quite reasonable in viewing these charges as what has been referred to as a causal fallacy, which occurs when there exists a flawed causal connection between events. The fallacy is not just a bad inference about a connection between cause and effect, but one that violates the canons of reasoning about causation. In other words, the result is a hasty and poorly premised conclusion that because an event happened at the same time or earlier as another, it is said to have been the cause of this event. It is easy to confuse correlation with causation. See Carey, The Uses and Abuses of Argument, 228 (2000).

Still, the State's reason for bringing the case does not matter in our assessment of probable cause. We focus, instead, on whether, regardless of the State's reason for the timing of its charge against the defendant, the facts show probable cause. Even though the evidence at this stage of the proceedings may be weak as to whether any criminal conduct occurred, it remains a fact question for a jury to determine in the event the State, on remand, chooses to pursue the case.

Reversed and remanded with directions.

6

\* \* \*

GREEN, J., concurring:  I write separately to point out each fallacy that the district court judge and Russell Walter illuminated under the current set of facts in this case.

As to the district judge, he flushed out and vividly illustrated a false correlation fallacy in this case. This fallacy occurs when someone presumes that two things that occur at the same time or the same place are connected.

First, the district judge found that both Walter and Justin Freeman tickled S.Y. on a fairly regular occurrence. Second, he found that "[n]o one, including the child, thought anything of the tickling until charges were filed against Mr. Freeman [involving sex crimes against another child in an unrelated case]."

Third, the district judge noted that the State then proceeded to charge both Walter and Freeman each with two counts of aggravated indecent liberties with S.Y. Then he correctly pointed out that just because Walter and Freeman were both tickling S.Y. at the same time, these tickling events were not necessarily related as cause to effect. Indeed, but from the simple fact that the two tickling events are correlated, it does not follow that one caused the other. In short, an inference of causal link based solely on evidence of correlation is fallacious. For example, the correlation may purely be coincidental.

As to Walter, he emphasized in his brief the possible adverse implications for him if he was jointly tried with Freeman. Walter points out that if he is tried jointly with Freeman, a jury may be persuaded to convict him based on another fallacy:  guilt by association. I encourage the parties to be aware of what our Supreme Court has declared: "[E]ven though the requirements of joinder are technically satisfied, the court should not join two defendants in one trial if either defendant will be prejudiced by the joinder." *State v. Aikins*, 261 Kan. 346, 360, 932 P.2d 408 (1997).

7